# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| BERT RODRIGUEZ, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 16 C 9605 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| SIMPLEX GRINNELL LP | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Believing they were underpaid, plaintiffs Bert Rodriguez and sixteen other named plaintiffs filed against defendant Simplex Grinnell LP[1] a three-count amended complaint asserting claims under the Employee Retirement Income Security Act ("ERISA") and the Illinois Prevailing Wage Act, as well as a claim for unjust enrichment. The parties have filed cross-motions for summary judgment. For the reasons set forth below, the Court denies plaintiffs' motion for summary judgment. The Court grants in part and denies in part defendant's motion for summary judgment.

## I.    BACKGROUND

The following facts are undisputed unless otherwise noted.[2]

---

[1] Simplex Grinnell LP has since changed its name to Johnson Controls Fire Protection, L.P. Plaintiff seems to have dropped its ERISA claim. [Docket 131 at 5 n. 2]. The Court will not exercise its discretion to dismiss the remaining state-law claims, because jurisdiction is still secure under 28 U.S.C. § 1332. Plaintiffs are citizens of Illinois. Defendant is a citizen of Nevada and Florida for purposes of § 1332(a), because each of its members and their members (all of whom are identified at Docket 73) are citizens of those states. The amount in controversy exceeds $5,000,000.00, and, for purposes of § 1332(d), defendant is a citizen of Delaware (under whose laws it is organized) and Florida, the location of its principal place of business.

[2] Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. *See McCurry v. Kenco Logistics Services, LLC*, 942 F.3d 783, 790 (7th Cir. 2019)

Defendant is a seller of fire alarm systems, and it also designs, manufactures and programs those systems. Plaintiffs are defendant's current and former employees who worked on public projects in the State of Illinois.

When a customer purchases a system, defendant supplies a fire alarm panel and the associated components, such as smoke detectors, pulls stations, heat detectors and strobes. An electrical contractor installs, at the customer's location, the electrical wiring, the fire alarm panel and the components.

In order for the smoke detectors, pull stations and other components to work properly with the fire alarm panel, the fire alarm panel must be programmed. The labor to program each fire alarm panel is provided by defendant, which employs installation technicians to perform that work. (Whether all or only some plaintiffs perform that work is not clear from the parties' statements of fact. It is clear that at least some plaintiffs perform that work.) Defendant trains its installation technicians (at a facility near Boston, among other places) on how to do the programming. The programming is done on a company laptop using proprietary software which can be used only by a technician possessing a specialized dongle (i.e., a key). In programming a system, the technician gives every component a programming address and instructs each component on how to perform in the event of an alarm. For example, an alarm might be programmed to recall elevators to a particular floor.

---

("We take this opportunity to reiterate that district judges may require strict compliance with local summary-judgment rules."). Where one party supports a fact with admissible evidence and the other party fails to controvert the fact with citation to admissible evidence, the Court deems the fact admitted. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of the duty to support the fact with admissible evidence. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). Furthermore, the Court does not consider facts that parties failed to include in their statements of fact, because to do so would rob the other party of the opportunity to show that the fact is disputed.

2

Much of that programming can be done by the technician at any location. So long as a technician has the laptop, dongle, software and a map of the system, a technician can do most of the programming at, say, defendant's office, a technician's home or the customer's location. Although much of the programming is capable of being done at any location, plaintiffs have put forth undisputed evidence that such programming work is sometimes done at the customer's location. Neither party has put forth evidence as to how often that portion of the programming is done at the customer's location versus off site. One part of the programming, however, *must* be performed at the customer's location: downloading the software to the installed fire alarm panel. That portion of the programming is done by the technician at the customer's location and is accomplished when the technician connects the laptop to the panel via cable and downloads the program.

Sometimes (the frequency is not clear from the record), when a technician arrives to program the fire alarm panel, the technician observes that a component is not functioning properly. If that happens, defendant expects the technician to inform the electrical contractor, whose responsibility it is to investigate the problem and make changes. Defendant informs the electrical contractors that its technicians are not electricians and should not be wiring and terminating wires. Nonetheless, one plaintiff testified that he has sometimes had to connect a wire to a panel when no electrical contractor was on site. It is not clear how often that happens or whether other plaintiffs have connected wires to panels.

The same technician who programs the fire alarm panel then also tests the system with the electrical contractor. The parties call that process "commissioning" and "acceptance testing," and it is required by code. For this testing, one person monitors the fire alarm panel while the

other sets off: a) smoke detectors using an aerosol can of smoke; b) heat sensors using a heat device; and c) pull stations by pulling the alarm.

That is not, however, the only time the fire alarm systems are tested. The parties agree that the National Fire Protection Association ("NFPA") Life Safety Code, which has been adopted by the State Fire Marshall, requires periodic testing of the components and of sprinkler systems. Defendant offers that testing service. Such periodic fire alarm testing seems quite similar to the acceptance testing, although it seems to be performed by defendant's inspectors rather than by the technicians. The periodic testing is important to life safety, and defendant requires its inspectors to obtain Level 2 certification from the National Institute for Certification in Engineering Technologies.

The periodic testing involves two inspectors, one of whom triggers the components while the other stays at the fire alarm panel to observe whether the components register on the panel. If any components fail to register, the inspector notes any problems or failures in a computerized report for the customer. While inspecting smoke detectors, inspectors sometimes remove the covers and blow out dust with a can of compressed air. During the testing process, inspectors also check the fire panel's batteries using a load tester and a multimeter. In addition, inspectors test the fire alarm panel using an alligator clip (i.e., jumper cable) to ensure the panel can detect a ground fault. During testing, inspectors use smoke bowls (to blow smoke at smoke detectors), heat testers, sensitivity testers, load testers, extension poles, a ladder, a multimeter, screwdrivers and wrenches.[3]

---

[3] Plaintiff Christopher Martin testified that he also used wire strippers and pliers in the course of his duties, but he did not specify whether that was in the course of inspection duties or service-call duties. Defendant put forth evidence that those tools are not used in the course of testing.

4

Inspectors also perform sprinkler inspections, which are required by the NFPA Life Safety Code. As with the other testing, this requires two inspectors, one of whom observes the fire alarm panel, while the other checks water pressure, inspects sprinkler heads and tests valves, switches and water flow rate. The inspectors document any deficiencies in a computer program.

If inspectors detect problems during the fire alarm or sprinkler inspections, customers have the option of hiring defendant to correct the problem. When defendant is hired to correct those problems on public projects, defendant sends an employee to make a service call and pays the prevailing wage for those service calls. Defendant does not, however, pay the prevailing wage for the programming work, for the acceptance testing or for the periodic testing of sprinklers and fire alarm systems.

More specifically, when defendant pays the prevailing wage for service calls, it pays according to the wage classification of Electronic Systems Technician ("EST"). The parties agree that the Illinois Department of Labor ("IDOL") prepares Prevailing Wage Sheets—which include descriptions of job classifications—for all 102 counties within the State of Illinois. The classifications are different in different counties. For example, for 75 counties, the IDOL includes a classification of EST. In some but not all counties, the job description for EST excludes work on fire alarm or life safety systems. Only one county, Cook County, has a classification for Communications System Technician. Twenty-eight counties have a classification for Communications Technician.

This case is not the first time defendant has been accused of failing to comply with the Prevailing Wage Act. The IDOL investigated defendant's predecessor about twenty years ago, and that investigation led to a settlement agreement. On October 26, 2001, the Illinois

Department of Labor entered a settlement agreement (the "2001 Agreement") with defendant's

predecessor.  The 2001 Agreement stated, in relevant part:

> Pursuant to the terms stated in this agreement ("Agreement"), Simplex and IDOL
> each desire to settle all matters involving the Audits and claims that have or could
> have been made under the Act for all Simplex projects undertaken from 1997
> through the date of this Agreement.
>
>                         \*   \*   \*
>
> I.      CONSIDERATION.
>
>      A.     SIMPLEX
>
>                         \*   \*   \*
>
>      2.     Simplex agrees that . . . it shall pay its employees
> performing work on Illinois public works projects . . . as follows:
>
>                         \*   \*   \*
>
>      a.     Simplex will pay the applicable prevailing wage
> rate for Electrician for all installation of fire alarms and sprinkler systems;
>
>      b.     Simplex will pay the applicable prevailing wage
> rate for Electronic Systems Technician for work performed by Simplex
> employees under the following Simplex codes (the tasks represented by each code
> are set forth in Exhibit A attached hereto and incorporated herein by this
> reference):  010, 021, 054, 066, 069, and 072;
>
>                         \*   \*   \*
>
>      d.     IDOL acknowledges and agrees that,
> notwithstanding the foregoing, the following tasks and activities are not covered
> by or subject to the prevailing wage rate requirements of the Act:  (i) diagnosing
> problems with a fire alarm and/or sprinkler system;  . . . and
>
>      e.     The prevailing wage rate for Electronic Systems
> Technician shall be the rate as set by IDOL for the county in which the work shall
> be performed.  In the event IDOL has not set a rate for Electronic Systems
> Technician for the county where the work is performed, Simplex will use the
> prevailing wage rate for Electronic Systems Technician set by IDOL for a
> contiguous county.
>
>      B.     IDOL
>
>      1.     In consideration for Simplex's execution of this Agreement
> and Simplex's promises made herein, IDOL agrees as follows:
>
>                         \*   \*   \*
>
>      d.     IDOL acknowledges and agrees that work
> performed under the following Simplex codes involves work that is not covered
> or subject to the prevailing wage requirements of the Act (the tasks represented by
> each code are set forth in Exhibit C attached hereto and incorporated herein by

reference): 004, 005, 011, 012, 013, 014, 015, 050, and 80's and 90's installation support codes.

\* \* \*

**EXHIBIT C**

\* \* \*

**004    Software program change per customer request**

As the name suggests, the technician is called because the customer wants the software which operates the system reprogrammed to add or change a feature (e.g: customer wants a master clock in a school reprogrammed for the bells to ring at different times on certain days). Depending upon the type of equipment or the complexity of the required changes, under this code, the technician may (1) program the unit through the operator interface panel on the front of the control equipment; (2) use a PC which is wired to the system; or (3) use a company provided laptop to complete the reprogramming.

**005    Specification change per customer request**

Under this code a technician is called because a customer wants to change the system functions to include functions which were not part of the original design or original specifications. For example, if the original specifications called for signals to sound only in the area where an alarm is initiated, the customer may want to change the program to signal all areas regardless of where the alarm originates. Once again, this may be done through the operator interface panel on the front of the control equipment, through the use of a PC which is wired to the system or through the use of a company provided laptop.

\* \* \*

**050    Inspection**

Under this code, the Simplex technician tests the operation of a fire alarm or a time clock. Technicians conduct certification tests utilizing test equipment which is UL listed to perform these tests (smoke generators, sensitivity test units, heat generating gun). The technicians also use the decibel level meters to measure sound levels of signal devices. After the inspection, technicians may print a report to identify any system failure.

(2001 Agreement/Docket 77-8 at 2-3, 11-12).

## II.    STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When considering a motion for summary judgment, the Court must construe the evidence

and make all reasonable inferences in favor of the non-moving party. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021 (7th Cir. 2018). Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). When "the movant is seeking summary judgment on a claim as to which it bears the burden of proof, it must lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of finding in favor of the non-movant on the claim. If the movant has failed to make this initial showing, the court is obligated to deny the motion." *Hotel 71 Mezz Lender LLC v. The National Retirement Fund*, 778 F.3d 593, 601 (7th Cir. 2015) (citations omitted).

## III.  DISCUSSION

Plaintiffs filed a first amended complaint asserting a claim under the Illinois Prevailing Wage Act, a claim under ERISA (which plaintiffs seem to have dropped) and a claim for unjust enrichment. The Court has since certified a class of:

> All laborers, workers and mechanics employed by Defendant on behalf of any non-federal public body who installed, programmed, assembled, disassembled, serviced, repaired, maintained, tested, or inspected fire alarm, sprinkler system, and/or other life security system equipment from October 7, 2011 to the present.

[Docket 111 at 5].

### A.  Illinois Prevailing Wage Act

In Count I, plaintiffs seek relief under the Illinois Prevailing Wage Act. As a federal court considering this case under diversity jurisdiction, this Court's job is to predict how the

8

Illinois Supreme Court would decide the issue. *Nationwide Agribusiness Ins. Co. v. Dugan*, 810 F.3d 446, 450 (7th Cir. 2015) ("As a federal court sitting in diversity jurisdiction, our task is to predict how the Illinois Supreme Court would decide issues presented here."); *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002) ("[W]e adhere today to the general rule, articulated and applied throughout the United States, that, in determining the content of state law, the federal courts must assume the perspective of the highest court in that state and attempt to ascertain the governing substantive law on the point in question.").

The Illinois Supreme Court has advised on how to interpret the Illinois Prevailing Wage Act. It has said:

> To interpret the Act, we adhere to the familiar principles of statutory construction. 'Our primary objective is to ascertain and give effect to the intent of the legislature.' 'The most reliable indicator of the legislative intent is the language of the statute, which should be given its plain and ordinary meaning.' Moreover '[a]ll provisions of the statute should be viewed as a whole.' 'Words and phrases should not be viewed in isolation but should be construed in light of other relevant provisions of the statute.' 'We presume, in interpreting the meaning of statutory language, that the legislature did not intend absurdity, inconvenience, or injustice.'
>
> 'To determine the legislature's intent, the court may properly consider not just the statute's language, but also the purpose and necessity for the law, the evils sought to be remedied, and the goals to be achieved.' The legislature's intent may be ascertained by considering the entire statute, its nature, its object, and the consequences of construing it one way or another.

*Valerio v. Moore Landscapes, LLC*, __ N.E.3d __, __, 2021 IL 126139 at ¶¶ 22-23 (Ill. May 20, 2021).

The Illinois Prevailing Wage Act provides that:

> [n]ot less than the general prevailing rate of hourly wages for work of a similar character on public works in the locality in which the work is performed . . . shall be paid to all laborers, workers and mechanics employed by or on behalf of any public body engaged in the construction or demolition of public work.

820 ILCS 130/3. That section continues with language that clarifies and limits, by saying:

> This *includes* any maintenance, repair, assembly, or disassembly work performed on equipment whether owned, leased, or rented. Only such laborers, workers and mechanics as are *directly* employed by contractors or subcontractors in *actual construction* work *on the site* of the building or construction job . . . shall be deemed to be employed upon public works.

820 ILCS 130/3 (emphasis added). So, only those laborers, workers and mechanics doing *actual construction* work (including maintenance) on site must be paid the prevailing wage, which leads to the question: what is construction under the Act? The Act also defines construction, which is:

> all work on public works involving laborers, workers or mechanics. This includes any maintenance, repair, assembly, or disassembly work performed on equipment whether owned, leased, or rented.

820 ILCS § 130/2.

## 1. Periodic testing/inspecting

Plaintiffs first argue that the periodic testing/inspecting work performed by inspectors falls in the category of maintenance and, thus, is construction under the Act. The Court does not agree. This work is required periodically by life safety standards and is used to determine whether any components of the system have failed or are working improperly. The inspectors make a list of any problems and present the list of problems to the customer. The inspectors do not fix the problems. These undisputed facts lead the Court to conclude that the testing itself is not maintenance work. The testing is merely a means of determining whether maintenance work is needed. If that testing determines that any portion of the system is not working properly, then any necessary corrections or repairs would be maintenance work. *See, e.g., People ex rel. Illinois Dep't of Labor v. E.R.H. Enterprises, Inc.*, 4 N.E. 3d 1, 12 (Ill. 2013) ("We believe the 'repair' of lines buried in the ground qualifies as construction of 'fixed works' under the Act."). In this Court's opinion, the testing itself, however, does not fall within the plain meaning of maintenance in the Prevailing Wage Act.

This conclusion is consistent with the view of the Illinois Department of Labor in 2001, when it entered the 2001 Agreement with defendant's predecessor. In the 2001 Agreement, the Illinois Department of Labor agreed that work in certain codes was not covered by the Prevailing Wage Act. Among the codes for uncovered work was the code for inspection work, which the 2001 Agreement described as:

> Under this code, the Simplex technician tests the operation of a fire alarm or a time clock. Technicians conduct certification tests utilizing test equipment which is UL listed to perform these tests (smoke generators, sensitivity test units, heat generating gun). The technicians also use the decibel level meters to measure sound levels of signal devices. After the inspection, technicians may print a report to identify any system failure.

(Docket 77-8 at 11-12). This is the same work that the inspectors in this case perform while conducting periodic testing. To be clear, the Court is not suggesting that the 2001 Agreement is binding on plaintiffs. Nonetheless, the 2001 Agreement is indicative of how the Illinois Department of Labor interprets the statute. It lends credence to the Court's interpretation.

Accordingly, the Court agrees with defendant that the periodic testing/inspecting work is not covered by the Prevailing Wage Act. Plaintiffs do not argue that the acceptance testing should be treated any differently from periodic testing, so the argument is deemed waived. In any case, the Court concludes that the same analysis applies to acceptance testing, such that acceptance testing is not covered under the Act.

On the issue of whether testing/inspecting work is covered by the Prevailing Wage Act, defendant is entitled to summary judgment, and plaintiffs are not.

2.      **Programming**

Next, plaintiffs argue that the programming work done by installation technicians constitutes construction under, and is thus covered by, the Illinois Prevailing Wage Act.

11

Before the Court considers the programming work at issue here, the Court notes that it is clear to this Court that the work—performed by the electrical contractors—of installing the fire alarm panels, installing the wiring and installing the components would constitute actual construction under the broad definition in the Act. First, that work is performed on site, which is a requirement of the Act. Second, such installation work seems, to this Court, an obvious example of construction, particularly given the broad definition in the Act. That work, of course, is not the work at issue in this case, because that work is performed not by plaintiffs but by electrical contractors.

The work at issue in this case is the work of programming the fire alarm panels. Some of that work can be performed off site, but the final portion—installing the software to the already-installed panel—must be performed on site. The Court agrees with defendant that any programming work performed off site is not covered by the Act. Work must be performed on site to fall within the language of the Prevailing Wage Act. On the other hand, the Court agrees with plaintiffs that the work of downloading the programming to the installed fire alarm panel, which is the last step in installing the system, falls within the broad language of the Prevailing Wage Act. That is because it occurs on site and because it is the final installation step before the system is operational. The Court does not see how the system could be considered installed until the program is downloaded to the system.

The Court appreciates that the IDOL, in the 2001 Agreement, agreed that certain programming was not covered by the Act. That programming, though, was programming of *changes* the customers requested after installation. (Docket 77-8 at 11-12) ("As the name suggests, the technician is called because the customer wants the software which operates the system *reprogrammed to add or change* a feature (e.g: customer wants a master clock in a

12

school reprogrammed for the bells to ring at different times on certain days). . . . Under this code a technician is called because a customer wants to *change the system functions* to include functions which were not part of the original design or original specifications.") (emphasis added). Thus, the 2001 Agreement sheds no light on whether the IDOL would consider the onsite programming during initial installation to be covered by the Act.

      **3.**     **EST**

Finally, plaintiffs argue that they were underpaid for certain work that all agree is covered by the Prevailing Wage Act. Specifically, the parties agree that when plaintiffs are dispatched by defendant on service calls to fix the problems with the fire alarm systems that are discovered during testing/inspection, that work on those service calls is covered by the Prevailing Wage Act. The parties agree that defendant pays for that labor using the prevailing wage classification of Electronic Systems Technician ("EST"). Plaintiffs believe they should be paid more.

Plaintiffs filed a 23-page brief, without a fact section, in support of their motion for summary judgment. Yet they devote only one paragraph to their argument that they should have been paid more for work defendant has paid at EST rates. Plaintiffs seem to be arguing that, in some counties, the EST classification excludes this type of work. Plaintiffs, however, do not put forth any evidence as to what counties these plaintiffs work in, do not cite any legal authority explaining how an employer is to choose among classifications and do not explain why a different classification would be a better choice in each county where plaintiffs work. Their arguments are waived due to insufficient development. *See Spath v. Hayes Wheels International-Indiana, Inc.*, 211 F.3d 392, 397 (7th Cir. 2000) ("[i]t is not [a] court's responsibility to research and construct the parties' arguments") (citations omitted).

Defendant, too, seeks summary judgment on this issue. Defendant's argument is that the Department of Labor agreed in 2001 that defendant should pay the EST rate for the service calls. Although defendant is not arguing that the 2001 Agreement bars plaintiffs' claims, the Court agrees that the 2001 Agreement is persuasive as to what the Department of Labor thought was the best classification as of 2001. Defendant has not, however, put forth any evidence that these plaintiffs are working in the same counties as employees were in 2001 or that the classifications in each county where plaintiffs work are the same as they were in 2001. What might have been the best classification in 2001 is not necessarily the best one today.

The Court cannot imagine either party obtaining judgment as a matter of law on this issue without some evidence of the counties in which these plaintiffs work and a county-by-county assessment of the best classification in that county. The parties have given the Court no reason to think a ruling could be made with less information.

Neither party is entitled to judgment as a matter of law on this issue.

## B. Unjust enrichment

Defendant moves for summary judgment on plaintiffs' claim for unjust enrichment. As defendant points out, an unjust enrichment claim stands or falls with a related claim based on the same conduct. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim."). Because plaintiffs' unjust enrichment claim rests on the same conduct as the claim under the Prevailing Wage Act, defendant is not entitled to judgment as a matter of law on the unjust enrichment claim either.

14

## IV.    CONCLUSION

For the reasons set forth above, the Court denies plaintiffs' motion [125] for summary judgment.  The Court grants in part and denies in part defendant's motion [130] for summary judgment.  This case is set for status on November 5, 2021 at 9:30 a.m.


SO ORDERED.                                    ENTERED:   August 26, 2021

                                    _____
                                    JORGE L. ALONSO
                                    United States District Judge